MARY E. WALTER, Respondent, v. GEORGE HOEFFNER, Appellant.

St. Louis Court of Appeals, November 9, 1892.

1. **Slander:** PLEADING. Distinct defamatory statements imputing the same offense to the plaintiff, but couched in different phraseology, and not appearing to have been spoken in the presence of the same hearers, need not be embraced in one count; accordingly, when the plaintiff alleges them as separate causes of action in several counts, he cannot be put to an election between the courts.

2. **Witnesses:** CROSS-EXAMINATION. A witness called by either party to prove any fact is his witness for all purposes, and may be cross-examined by the adverse party upon the entire case.

3. **Practice, Appellate:** PRESUMPTION THAT ERROR IS PREJUDICIAL. Error is presumed to be prejudicial; and, when it has intervened, the party in whose favor it was made must satisfy the appellate court that it was not prejudicial, in order to avoid the reversal of the judgment in his favor.

4. ——: ——. But *held*, by THOMPSON, J., that, though this was the rule of decision under writs of error at common law, it is abrogated by section 2303, of the Revised Statutes of 1889, which puts upon an appellant or plaintiff in error the burden not only of pointing out error, but also of showing that such error was probably prejudicial.

5. **Slander:** ADMISSIBILITY OF DEFAMATORY STATEMENTS BY THE DEFENDANT CONCERNING THIRD PERSONS. In an action for slander evidence of what the defendant said on the subject under investigation in the conversation in which the alleged slander occurred is competent, but not remarks made by him in that conversation concerning third persons and having no reference to the plaintiff.

Walter v. Hoeffner.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*John J. O'Connor*, for appellant.

(1) The alleged slanderous words charged in both counts, if spoken, were parts of one conversation and imputed but one crime to plaintiff, and, therefore, make but one cause of action. Hence, the court erred in overruling, before and after the taking of plaintiff's evidence, defendant's motion to elect. *Casey v. Aubuchon*, 25 Mo. App. 91. (2) The court erred in limiting defendant in cross-examination of plaintiff's witness, Officer Dillon, and in doing so laid down a rule that wrongfully [abridged defendant's rights in the cross-examination of every other witness thereafter produced by plaintiff. The proper rule of law is contrary to that held by the court, and declares that a witness may be cross-examined upon any issue on trial without becoming the witness of the cross-examiner as to matters in regard to which he was not examined on his direct examination. *Jones v. Roberts*, 37 Mo. App. 163; *Railroad v. Silver*, 56 Mo. 265. (3) It was error to admit evidence over defendant's objection of what defendant said to Mrs. Ryan; it unjustly prejudiced the jury against defendant.

*Dodge & Mulvihill*, for respondent.

(1) Slanderous words were spoken of and concerning the respondent by appellant at different places on two different occasions, and were heard by two sets of persons; hence, it was correct to plead the words in two counts as there were two causes of action. *Wood v. Hilbish*, 23 Mo. App. 389; *Morgan v. Rice*, 35 Mo.

App. 591; *Casey v. Aubuchon*, 25 Mo. App. 97; *Pasley v. Kemp*, 22 Mo. 409. (2) The cross-examination of Officer Dillon was not abridged. On the contrary, the very question to which objection had been made, and had been sustained by the court, was afterwards put to the same witness and answered, and the cross-examination of witness continued without further objection. (3) The conversation with Mrs. Ryan was part of the *res gestæ*, and being held at the very time the alleged slanderous words were used towards the respondent goes to show the state of mind appellant was in, his malice; under all the rules of evidence it was proper to admit this. In any event the answers, not being objected to, were competent. *Corbett v. Railroad*, 26 Mo. App. 621.

ROMBAUER, P. J.—The action is for slander. The petition is in two counts. The first count charges the speaking of the words, "slut, bitch and whore," of and concerning the plaintiff, in the presence and hearing of others; and the second count the speaking of the following words: "You [meaning plaintiff] are a street walker, and that you [meaning plaintiff] fooled with the roomers to support Mr. Walter [meaning plaintiff's husband], and that the $10 a week you [meaning the plaintiff] paid while Mr. Walter [meaning plaintiff's husband] was at the hospital was made in a dishonest way." The speaking of the words set out in the second count is accompanied with an innuendo that the defendant thereby meant to accuse the plaintiff of adultery. The answer consists of a general denial, and pleads the plaintiff's bad moral character in mitigation of damages. It also states that the action was instituted through fear and restraint of plaintiff's husband. Upon a trial before a jury there was a verdict for plaintiff for $500 on the first count and for

$2,000 on the second count, and the court entered judgment thereon for $2,500.

The first point relied on by appellant for reversal is that the court erred in not compelling the plaintiff to elect on which of the two counts she would proceed to trial. The point is sought to be supported by our ruling in *Casey v. Aubuchon*, 25 Mo. App. 91, where we held that the speaking of a number of distinct defamatory statements at the same time, all charging the same offense, although in different phraseology, *may* be embodied in the same count. We did not hold that they *must* be so embodied, even when spoken on one occasion and in the presence of the same hearers; much less that, when spoken in different places and in the presence of different hearers, they *can* be so embodied. There is nothing in plaintiff's petition to show that the words in both counts were spoken on the same occasion and in the presence of the same hearers, and the proof tends to show that the latter was not the case. The court, therefore, would have erred, had it compelled the plaintiff to elect on which cause of action she would proceed.

The next error complained of is the action of the court in not permitting defendant to cross-examine one of the plaintiff's witnesses on matter pertinent to the issues touching which he had not been examined in chief. The ruling of the court on that subject best appears from the following statement of the law made by the court in presence and hearing of the jury: "I am not saying he is not a competent witness. I am saying how far you can cross-examine. The moment you drop cross-examination you are not allowed to put leading questions; you are undertaking to cross-examine on a matter on which they have not asked anything at all. As in this case he [the witness] was examined

only as to the matter of reputation, and no attempt made to examine further than that, I think in this case I will allow you to cross-examine to that extent, and no further." To this ruling the defendant excepted at the time.

The rule on this subject in this state is, and always has been, that a witness, called for either party, to prove *any* fact, is his witness for all purposes, and may be *cross-examined* by the adverse party on the whole case. This is in substance the English rule, which is followed in many of our states, though not in others, nor in the federal courts. It was stated as the correct rule in *Page v. Kankey*, 6 Mo. 433, by Judge NAPTON, and has been followed ever since in this state. *Brown v. Burrus*, 8 Mo. 26; *St. Louis & Iron Mountain Railroad v. Silver*, 56 Mo. 265; *Jones v. Roberts*, 37 Mo. App. 163; *State v. Brady*, 87 Mo. 142. In *Page v. Kankey*, *supra*, and *State v. Brady*, *supra*, the judgments were reversed for similar errors in denying the right of cross-examination.

The plaintiff contends that this error was not prejudicial, because it appears by other parts of the record that the defendant's counsel was subequently permitted to put leading questions to this same witness on other parts of the case. But since leading questions can be put to a party's own witnesses in the discretion of the court, it does not appear by that fact alone that the court receded from its former ruling, deliberately made. Error is presumed to be prejudicial. To justify an appellate court in affirming a judgment, when error has intervened in the trial, the burden is upon the party claiming the benefit of the judgment to satisfy the appellate court that the error was not prejudicial. *Clark v. Fairley*, 30 Mo. App. 335. We must say now, as we said in that case, that the appellant has failed to satisfy us of that fact. The defendant may

have been deterred by the ruling of the court from cross-examining any of the plaintiff's witnesses subsequently called on matters touching which they had not been examined in chief, and it was not necessary for him to make an attempt to do so in each case in order to save his exceptions. *Costigan v. Trans. Co.*, 33 Mo. App. 269, 291.

As the judgment will have to be reversed for this error, we will only briefly notice others complained of as a guide to the trial court in a retrial of the cause. In the course of the cross-examination of Dienstbach, a witness for the defendant, he was asked what remark was made by the defendant to Mrs. Ryan, one of the by-standers. The defendant objected on the ground that, unless the remark was made concerning plaintiff, the question was improper. The court thereupon ruled that the plaintiff was entitled to elicit from the witness "all the conversation that occurred at that time." Counsel for defendant replied: "Do I understand that, if this man said slanderous words *about Mrs. Ryan* to Mrs. Ryan herself, that is evidence in this case. And the court ruled that "it was competent to prove anything that was said by the defendant, whether it related to the plaintiff or not, since the defendant had testified to all that was said." The witness thereupon stated that the defendant made a grossly obscene remark to Mrs. Ryan, having reference exclusively to Mrs. Ryan. This evidence had an unquestioned tendency to inflame the jury against the defendant, and, if its admission was erroneous, the error was clearly prejudicial. The question and answer were both improper. What the defendant said in the same conversation *on the subject* under investigation was competent. *Lyon v. Batz*, 42 Mo. App. 606; *Unterberger v. Scharff*, decided at the present term. But on what theory evidence was admissible of an

offensive remark, made by him to one of the bystanders and having no reference whatever to plaintiff, is not conceivable.

We find no error in other parts of the record, of which the defendant has any right to complain. The defendant's instructions are too favorable to him, as they confine the plaintiff to proof of the speaking of the identical words charged, whereas, under all the cases, it suffices to prove either the identical words or substantially the same words. *Noeninger v. Vogt*, 88 Mo. 589, and cases cited.

The judgment is reversed and the cause remanded. All the judges concur.

THOMPSON, J. *(concurring).*—I concur in the result, and I concur in the conclusion, that the limit which the court imposed in this case upon the defendant's right of cross-examination is to be regarded as prejudicial under the decision of our supreme court in *State v. Brady*, 87 Mo. 142, though, if the question were an open one, I should be of a different opinion. But I do not concur in so much of the opinion as holds, restating the doctrine of *Clark v. Fairley*, 30 Mo. App. 335, that error is presumed to be prejudicial, and that, to justify an appellate court in affirming a judgment when error has intervened in a trial, the burden is on the party claiming the benefit of the judgment to satisfy the appellate court that the error was not prejudicial. Substantially that, I am satisfied, was the rule of decision under writs of error at common law *(People v. Wiley*, 3 Hill (N. Y.) 194), and would continue to be the rule of decision in this state but for the following prohibitory statute: "The supreme court, or courts of appeal, will not reverse the judgment of any court unless it shall believe that error was committed by such court against the appellant or plaintiff in error, and

materially affecting the merits of the action." Revised Statutes, sec. 2303. Proceeding in obedience to this statute, we cannot reverse a judgment for mere error, or for what may be called technical error; but before we can reverse a judgment for error, we must *believe* that the error was an error "materially affecting the merits of the action." This, in my judgment, puts upon the appellant or plaintiff in error, from first to last, the burden not only of pointing out error upon the record, but such error as materially affected the merits of the action to his prejudice. My judgment, in other words, is that an appellate court, proceeding in obedience to this statute, cannot reverse a judgment for an error of procedure upon a mere blind legal presumption that it was prejudicial, and upon a theory that there is some sort of burden of proof upon the respondent or defendant in error to show that it was not prejudicial; but that it is the duty of the appellate court, before it can reverse for any species of error, to satisfy itself and believe, from an examination of the whole record, that the error was one materially affecting the merits of the action to the prejudice of the appellant or plaintiff in error.

I am confirmed in this view by what I find in a recent work of great merit on appellate procedure, one of the authors of which is chief justice of the supreme court of Indiana. In that work it is said: "A ruling must appear by the record, and from the record it must be shown to be erroneous in a strict sense; that is, it must appear that the ruling was wrong, and that it probably so operated as to bring about a wrong final result." Elliott on Appellate Procedure, sec. 592. And again: "A ruling may be wrong, and yet not constitute error in the true and strict sense of the term. If the record does not show that it was probably prejudicial, that is, that it probably conduced to a wrong

final decision, it is not really error. It is not necessary that the record should show that the wrong ruling certainly brought about a wrong result, for it is sufficient if it appears that it probably influenced the court to a wrong conclusion." Sec. 593. And further: "There are cases which seem to form exceptions to a general rule that the record must make it appear that the wrong ruling probably prejudiced the complaining party, but, upon a close analysis, it will be found that these cases are apparent, rather than real, exceptions. The principle upon which they proceed is that the ruling is in and of itself of such a nature and of such force as to create the presumption that it conduced to bring about a wrong result." Sec. 594. I cannot occupy space with an examination of the multitude of authorities cited by the learned authors in support of these principles. I merely quote from a decision of the supreme court of Indiana the following statement of doctrine: "It has long been the settled rule that this court will not reverse a judgment of the trial court unless the record affirmatively shows the existence of errors urged by the complaining party, and, also, that the errors were, or probably were, prejudicial to the party against whom they were committed." *Harter v. Eltzroth*, 111 Ind. 159. And the following from the supreme court of Ohio: "To justify the reversal of a judgment on error the record must affirmatively show, not only that error intervened, but that it was to the prejudice of the party seeking to take advantage of it." *Scovern v. State*, 6 Ohio St. 288, 294. I am persuaded that these quotations express the rule intended to be established by our legislature in enacting the statute already quoted, and that the intention was to put upon the appellate judges the moral duty of asserting and *believing*, from an examination of the whole record, that any error which may have

supervened was probably prejudicial to the party complaining, before reversing the judgment for such error.

I file this separate opinion, because, now that I am about to retire from the court, I wish to set myself right on what I regard as a serious slip made by the court in *Clark v. Fairley*, 30 Mo. App. 335, in announcing the rule of appellate procedure which is reasserted in the opinion of the court in this case. I do it the more readily, as I am conscious that I assisted in the formulation of that proposition as it is stated in the opinion in *Clark v. Fairley, supra*. But, on further reflection, I have several times regretted that we stated the rule in that way; and it is now my deliberate judgment that the admission of a presumption of law, that prejudice attends technical error, is a principle that materially abrogates the statute, that tends to the disposal of causes on grounds that do not affect their real merits, and that leads to reversals of judgment and the multiplication of new trials, and to the consequent protraction of litigation, which is a great public evil.